# LAURA V. SCHRIVER

*vs.*

# THE GARDEN THEATRE COMPANY ET AL.

*Contract for Lease—Evidence as to Acceptance.*

In a suit for the specific performance of an alleged contract to make a lease to plaintiff, *held* that the evidence failed to show an acceptance by plaintiff of defendant's offer within the time named therein.

*Decided March 23rd, 1922.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.).

Bill by Laura V. Schriver against The Garden Theatre Company and Thomas F. McNulty, Sheriff of Baltimore City. From a decree for defendants, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, ADKINS, and OFFUTT, JJ.

*Wm. Purnell Hall* and *Julius H. Wyman,* with whom were *James B. Guyton* and *Jacob S. New* on the brief, for the appellant.

*Horace T. Smith* and *Howard Bryant,* with whom were *H. Webster Smith, Thomas J. Tingley,* and *Smith & Smith* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City, dismissing a bill of complaint filed by the appellant in that court against the appellees for the purpose

of procuring the specific performance of an alleged contract made by the Garden Theatre Company to lease "the front portion of 114 W. Lexington Street" to the appellant for a term of five years from May 31st, 1919, and to enjoin the appellees from interfering with her possession of those premises.

The first five paragraphs of the bill of complaint are as follows:

"1.   That in the month of December, 1915, this complainant was desirous of opening in the City of Baltimore a hair dressing parlor, and finally decided that she would like space on the second floor of the building 114 West Lexington Street, the property of the defendant, and after interviewing the tenant of said floor this complainant had Charles N. Boulden, a real estate broker in the City of Baltimore, call on Charles E. Whitehurst, the president of the defendant corporation, to see what arrangements could be made about this complainant occupying part of said second floor and the possibility of obtaining a lease for said second floor after the expiration of the lease of the then tenant.

"2.   That the said Charles N. Boulden had a conference with the president of the defendant corporation and reported to this complainant that she might become the subtenant for part of the second floor of said building, and at the expiration of the lease of the then tenant, the defendant corporation would give her a lease for any period up to five years at the rental of fifty dollars per month.

"3.   That your petitioner being a widow, with a small family to support, and being possessed of limited means, was not satisfied to invest the small amount of capital she had in her enterprise unless she had assurances in writing from the defendant corporation, and she had the said Boulden write to the president of the defendant corporation, as follows:

" 'December 23rd, 1915.

" 'Charles E. Whitehurst, Esq.,

" 'Pres. of the Garden Theatre Co.,

" 'Park Ave. & Lexington St.,

" 'City.

" 'Dear Sir:

" 'Confirming our conversation today, wish to say for Mrs. Laura Schriver, who has leased the front portion of 114 W. Lexington St. from Mr. M. W. Mullen from January 15 to June 1, 1916, with assurances that you will give her an extension of the lease on the front portion of this floor at the same rental, $50.00 per month, for any length of time she may decide, say, five years, said lease to include the heat but no light, also that you will give her some display at the entrance, a small case or sign, indicating her business, which is hair dressing, manicuring and massage. Please confirm our understanding by a letter that you will issue to her the said lease at such time she may call upon you for it, as Mr. Mullen does not know yet that he will give up the premises on June 1, 1916.

" 'An early reply will oblige,

" 'Yours very truly,

" '(Signed) Charles N. Boulden, Agent.'

And that upon the receipt of said letter by Charles E. Whitehurst, he replied to the same as follows:

" 'Mr. Charles N. Boulden,

" 'Baltimore, Md.

" 'Replying to yours of December 23rd, wish to state that we have no lease with Mr. Mullen. Our lease is with the Ruud Manufacturing Company, but we have no objection to them subleasing to your tenant, Mrs. Schriver, and at the expiration of said lease we will be very glad to have her as a tenant for any length of time she may desire up to five years at $50 per month, said lease to include heat and no light. Will give her certain amount of display at the entrance in the way of a sign or small case indicating her business, provided, of course, it is submitted to us and our per-

mission obtained in writing.   The above agreement must be accepted by her twenty days from the date of this letter.

" 'Yours very truly,
" '(Signed)  C. E. Whitehurst.'

"4.   That relying upon the promises and represen- tations set forth in the letter above referred to, this complainant called at the office of the company the day following the receipt of the letter by Boulden, and had a personal interview with its president, Charles E. Whitehurst, whose office was located in the New Theatre Building, and discussed with him the matter of the proposed lease; that she would accept the proposition he had made in writing, and thereupon the said Whitehurst accompanied this complainant to the Garden Theatre Building and assigned to her the advertising space and display she was to have at the entrance of said building, as set out in the letter to Boulden above mentioned; that your complainant ac- cepted the space, ordered her sign painted and imme- diately moved in and had her equipment installed.

"5.   That the said Whitehurst, at the conference with your complainant above referred to, told her that he would notify her when the Ruud Manufacturing Company's lease terminated; that they had an option of renewal of three years from June 1st, 1916, but if they did not exercise their right to renew, under the option, she could have her lease, and if they did renew, she would be given a lease at the expiration of the renewal period, and, that whatever was done or to be done, he would promptly notify her, all of which statements this complainant entirely relied upon, and as a result thereof expended large sums of money in fitting out said second floor."

Then follow other allegations showing that the complain- ant paid rent regularly until April 4th, 1919, when she was notified by the Garden Theatre Company that it had notified Mullen, "agent of the Ruud Manufacturing Company, that

his lease of the second floor of the Garden Theatre Building will be terminated on May 31st, 1919"; that that was the first notice she had received that the "lease on said floor was at an end" and that she at once placed the matter in the hands of her attorney who demanded the execution of the lease to her, but that although she was at all times ready and willing to execute the lease the defendant refused to execute it, and that subsequently a judgment for the restitution of the premises was entered against her, in a proceeding instituted for that purpose by the Garden Theatre Company in the People's Court of Baltimore City, and that the Sheriff of Baltimore City was about to execute a writ of possession on that judgment. To that bill the defendants both answered and demurred. Thomas F. McNulty, the Sheriff of Baltimore City, after demurring generally to the bill, disclaimed any knowledge of the facts set up in it, or any interest in the controversy other than the due execution of the "writ or mandamus" in accordance with the duties of his office.

The Garden Theatre in its demurrer to the bill assigned the following grounds of objections:

"(1) That the plaintiff has not stated in her bill such a case as entitles her to any relief in equity against the defendant.

"(2) That the bill of complaint does not disclose any valid and enforceable agreement to lease between the plaintiff and this defendant.

"(3) That the fourth section of the Statute of Frauds is a bar to the relief sought by the plaintiff in her bill, and is urged and relied upon by this defendant as a defense, notwithstanding any statement contained in this answer or in the bill of complaint.

"(4) That the bill of complaint does not disclose that the plaintiff is entitled to any right or interest in respect of the property described in the bill.

"(5) That the plaintiff has been guilty of laches in the assertion of her alleged rights to relief in this court.

"(6) That in the ejectment case of this defendant against this plaintiff, filed in the People's Court of Baltimore City on August 14th, 1920, and finally determined in the Baltimore City Court on appeal on March 4th, 1921, when judgment was rendered in favor of this defendant for the restitution of the premises described in the bill of complaint, the rights asserted by the plaintiff in the present suit were finally determined and became and are *res adjudicata.*"

It further answered the allegations of fact in the bill of complaint, by denying the existence of the contract set up by the complainant. Evidence relating to the issue of fact thus made was taken orally before the court, which, after the case had been argued, on July 25th, 1921, passed the decree dismissing the bill of complaint, from which this appeal was taken.

The principal and indeed, the crucial and pivotal question upon which this case turns, is whether it appears from a clear preponderance of all the evidence in the case that there was any agreement between the Garden Theatre Company and the appellant under which the company agreed to lease to the appellant the premises in question for five years from May 31st, 1919.

Before examining the proof in the case bearing upon that question, we will refer briefly to the principles by which the quantity and the quality of proof which the complainant was required to produce to meet the burden placed upon her in this case is to be measured. In *Miller's Equity,* sec. 676, it is said: "In respect to the character of proof required to establish a contract sought to be enforced, it is the duty of the plaintiff to make out the case set up in the bill with such distinctness, certainty and legality in all its parts that the court may have no difficulty in deciding exactly what the contract was. The proof must be clear and explicit, leaving no room for reasonable doubt, and must in every essential particular correspond with the terms of the contract set up in

the bill." That statement of the law is so sound and so well supported by authority, and the principles laid down there have been so often stated by this Court that further iteration of them is not needed.

The contract which is the basis of this suit must be found in the correspondence between Charles E. Whitehurst and Charles N. Boulden, which was introduced to prove an offer, and in the testimony of witnesses offered for the purpose of showing an acceptance of that offer.

The offer was clear enough and expressed in this language: "Our lease is with the Ruud Manufacturing Company, but we have no objection to them sub-leasing to your tenant, Mrs. Schriver, and at the expiration of said lease we will be very glad to have her as a tenant for any length of time she may desire up to five years at $50 per month, said lease to include heat and no light." But it was made upon the expressed condition that it be accepted within twenty days, and the inquiry is therefore further narrowed to ascertaining whether there was such an acceptance. Boulden had in his letter to Whitehurst asked for a lease for a term "of say five years" beginning at the expiration of Mullen's lease. Whitehurst in his reply offered to lease the property for "any length of time up to five years, at the expiration of its lease to the Ruud Manufacturing Company." To support the complainant's right to a specific performance of the contract in this case the evidence must show, then, (1) when the Ruud lease terminated and (2) that the appellant accepted the offer of a lease for five years from that time.

The most definite and convincing evidence in the case as to when the Ruud lease terminated is found in the original lease from E. A. Stehl & Son to the Ruud Company, under which the Ruud Company held the property, which shows that the term expired on May 31st, 1915, and a notice from the Ruud Company to the Garden Theatre Company that it would surrender the premises on May 31st, 1915. The lease contained a provision that at the expiration of the original

term it could be renewed for a period of five years upon serving a written election to so extend it upon the landlord. The evidence shows that this notice was never given, but on the other hand it appears that the Ruud Company declared it would surrender the premises at the end of the original term to wit, May 31st, 1915. But both the correspondence and the oral testimony show that Whitehurst, when speaking of that lease to Boulden or Mrs. Schriver, did not know whether the tenancy of the Ruud Company had expired or, if it had not, when it would expire, and when in 1915 or 1916 he spoke of having a lease with the Ruud Company he was obviously mistaken, since the original term expired in 1915, and the renewal term, if the lessee had elected to renew, would have ended in 1920. Much of the confusion as to when the Ruud tenancy terminated arises from the fact that M. W. Mullen, the sales agent of that company, either for himself or on its behalf, retained possession of the property after the Ruud Company had surrendered it, and that he remained in possession as a tenant from year to year of the property, holding over after the expiration of the lease. So that, when Whitehurst spoke to Mrs. Schriver and Boulden about the property in 1915 and 1916, the term of the original lease was at an end, and when, according to the appellant's testimony, he told her Ruud's term would expire in 1919, he was mistaken. The evidence, therefore, showing when the term fixed in the Ruud lease expired, is neither clear nor satisfactory, but if we could assume that it did end on May 31st, 1915, as contended by the appellant, and that the appellees' offer to lease the property for a period of five years contemplated a term beginning on June 1st, 1915, the evidence in this case does not show with the certainty required in such a case as this that that offer was accepted.

Mrs. Schriver, testifying in her own behalf, said that, having learned from a sign that the property was for rent, she called up the Ruud Manufacturing Company, and was referred to Mr. Charles N. Boulden; that he took her over

the property and she made a deposit of twenty-five dollars with the Ruud Company upon the understanding that it would secure a written agreement from the Garden Theatre Company; that at her instance Boulden wrote the letter of December 23rd to the Garden Theatre Company, and received in reply the letter referred to above; that within a day or two after receiving that reply she called on Mr. Whitehurst at the New Theatre. The witness then described in the following language what was said and done at that interview: "I explained to Mr. Whitehurst that under the terms of the letters I would accept the place and he explained thoroughly to me that he had no lease. He said, 'We have have no lease with Mr. Mullen; our lease is with the Ruud Manufacturing Company, which is to run about three years.' That meant nothing to me at all because I wouldn't take a place for three years. All I wanted to be guaranteed was that after the Ruud lease expired I could have it for a period of five years. Well, Mr. Whitehurst gave me the space for my display and I moved in. Mr. Mullen conducted his business the same as before, but when I moved in, it was simply the Ruud office moved in the rear and I moved in the front. As far as I know there was no change with Mr. Mullen. As far as I know he represented the Ruud Manufacturing Company and does still today. Q. You called on Mr. Whitehurst in response to that letter? A. Yes, and I told him under the terms of that letter I would accept the location. * * * Mr. Whitehurst told me that the Ruud Company had three years in there. He never intended to rent to Mr. Mullen. Mr. Mullen was never to become a tenant to the Garden Theatre Company. After the expiration of the Ruud Company's lease I was to become the tenant, and Mr. Whitehurst explained to me he would notify me to that effect, which he did on the 31st of May, 1919." She further testified that after that interview, on the 10th or 11th of January, 1916, she moved in and spent several thousand dollars in fitting up the place; that she continued from that time to pay rent to the Ruud Company until April 4th, 1919, when she received

the following notice from The Garden Company: "You are advised that the Garden Company has notified Mr. M. W. Mullen, agent of the Ruud Mfg. Company, that his lease of the second floor of the Garden Theatre Building will be terminated on May 31st, 1919," and that she thereupon, through her counsel, Mr. W. Purnell Hall, demanded a lease for the property, which the company refused to give. Except for the testimony of Mr. Hall, showing the correspondence passing through his office in reference to the lease, this was all the material testimony offered to show that the appellant accepted within the stipulated time the offer contained in the Whitehurst letter of January 8th, 1916.

Charles N. Boulden, to whom the letter last referred to was addressed, and who was then acting as Mrs. Schriver's agent, testifying for the defendant said he had submitted that letter to her and she had said she would consider it, and that, to quote from his testimony, "she was not sure whether, of course, the business would be a success, that it was an experiment, and what not, on her part, in that location, and she would attend to it, and I then withdrew from the matter at that time. I found later she did not accept that—I did not know whether she did or did not until sometime later." He also gave the following testimony in reference to her acceptance of the Garden Company's offer: "I called in there on one or two occasions to see her about a prospective purchaser for her business, and at that time it was stated she had not taken the lease privilege, and it was an open question, and she would sell the business if she got a proper offer. * * * Q. You say she did not exercise her option? A. She did not take the privilege of the letter for the lease. Q. Did she tell you that? A. Yes, that was when we talked over the probability of selling the business. She had not the lease then. * * * Q. She said that within a year after you had been paid for your original employment? A. Yes. Q. And she also said at that time that she had not, up to the time she was speaking of selling out her place, yet exercised the option or privilege she had under this correspondence—she told you

that? A. Yes. * * * As I understood it, it was that she had a certain limit of time for the exercise of this privilege, which she delayed in doing, and did not exercise it and did not get it, for reasons best known to herself. * * * Q. You do not mean to say that she refused a lease? A. I do not know. Q. Did you ever ask her if she had the lease? A. When I came in with the prospective buyer, I am sure that question was ascertained and she said, 'No,' she had never gotten the lease."

Charles E. Whitehurst gave the following testimony concerning Mrs. Schriver's conduct in connection with the offer contained in his letter of January 8, 1916: "Now Mr. Whitehurst, under that letter I ask you this question, whether or not Mrs. Schriver ever accepted the proposition contained in that letter in reference to a lease? A. She did not. Q. She did not? A. No, sir. Q. Now, didn't you have a conversation with her in reference to that after you wrote that letter to Mr. Boulden? A. Yes. Q. Will you tell his Honor what that conversation was? A. She stated to me that she did not want to sign up for five years because she did not know whether she could make good or not, that she had just started in business." This was in substance all the material testimony bearing upon the question before us, to wit: Whether Mrs. Schriver accepted within the stipulated period of twenty days the offer or option given in Mr. Whitehurst's letter of January 8th, 1916. Taking it in its entirety, and drawing from it every legitimate inference supporting the plaintiff's contention, we cannot say that it is sufficient to meet the burden cast upon the appellant of proving by a fair preponderance of the evidence that she accepted the Garden Company's offer to lease to her for a term of five years the property in question. She testified positively she did accept it. Whitehurst testified positively that she did not. Except for this contradiction there is nothing in the record to impeach the credibility of either witness, nor is there anything to warrant us in extending greater credit to one than to the other in their testimony concerning facts

known only to them.  But the appellant was contradicted not only by Whitehurst, but by Boulden, who acted as her agent in the negotiation with Whitehurst, who testified that she told him after the expiration of the period of twenty days, within which the option was to be exercised, that she had never exercised the option to lease the property.

Nor is it without significance that the appellant neither asked for nor received at the time of her first interview with Mr. Whitehurst a written contract from the Garden Company in reference to the lease, nor accepted in writing the offer contained in the company's letter to Boulden of January 8th, 1916, although she was advised by Boulden upon the receipt of that letter to "secure" herself, because, having asked for a written offer, the natural thing for her to have done, had she wished to complete the transaction, would have been to have written an acceptance of the offer.  Nor is this failure of appellant's proof cured by the so-called physical facts or the admissions made in the correspondence found in the record.  An inference that she accepted the offer is sought to be drawn from the fact that the appellant moved into and improved the property.  But that fact loses the significance it might naturally have when it is considered that she moved in, not as a tenant of the Garden Company but of the Ruud Company, and that, while she contends that she was induced to move in by the Garden Company's promise to give her a lease, she failed to show by sufficient evidence that such a promise had been given.  The mere fact that she improved the property while she rented it from the Garden Company's tenant was not in itself proof that she had accepted the Garden Company's offer to lease her the property after the term of her sublessor had expired, when it is considered that the record does not show that the company authorized the improvements or even knew of them.  Nor has the fact that she was assigned space on the front of the building for an advertising display great weight.  It is not denied that the Garden Company was willing to have her rent from the Ruud Company a part of the property it occupied,

and that at that time it wanted to secure her as a tenant when the Ruud Company vacated the property. Its consent under such circumstances to any such advertisement was a natural concession such as any landlord would likely make to secure a desirable tenant.

It could be inferred from these facts that the appellant expected to lease the property for some considerable period, and that the Garden Theatre Company expected to give her such a lease, but they do not by themselves establish, with that degree of certainty and precision required of the complainant in cases of this character, a contract under which the company was bound to give and she was bound to take a lease, which a court of equity should specifically enforce. It is one thing to say that, if she spent money in improving property without having the right to occupy it for a period long enough to justify the expenditure, that she did an unwise or an imprudent thing, but it is another and quite a different thing to say that because she made such expenditures she must have had a contract permitting such occupation.

Since in our opinion the evidence fails to prove the alleged contract, which is the basis of the suit, with that degree of certainty and distinctness essential to the obtention of the relief prayed, it becomes unnecessary to refer to the other questions raised in the pleadings and in the arguments of counsel, and it follows that the decree appealed from will be affirmed.

*Decree affirmed, with costs to the appellee.*